MARY E. LYONS, Tutrix, et al., *v.* R. W. McRAE—THOMAS CLAYCOMB, Third Opponent.

Where property has been seized and sold under a judgment, for the benefit of certain creditors, the money remaining in the hands of the Sheriff, and the debtor takes advantage of the Insolvent Act, before the decision of the claims of the various parties to the thing seized, the money thus held by the Sheriff will become part of the assets of the insolvent, and is subject, like all the rest of his property, to be litigated *in concurso.*

Where a third opposition has been filed, claiming a privilege upon the proceeds of the thing seized, and there is a surrender before judgment in the suit, this litigation must necessarily be referred to be tried with the other insolvent proceedings.

APPEAL from the District Court of the Parish of Pointe Coupée, *Haralson, J.* *T. J. & W. H. Cooley, A. Provosty,* and *P. H. Ray,* for plaintiffs and appellants. *U. B. & E. Phillips,* for defendant.

COLE, J. The plaintiffs, in the four suits of *Lyons, Castle, Giquel & Jamison* and *Wilson & Funk* against *McRae,* being judgment creditors of *McRae,* issued executions, and caused fifty-five hogsheads of sugar, of the crop of 1857, made by *McRae* on his Glen Mary plantation, to be seized to satisfy their judgments against him.

Before the sugar was sold *Claycomb,* on the 5th of February, 1858, filed his third opposition, claiming a privilege on the proceeds, for the payment of hogsheads and barrels furnished by him to *McRae,* which were used in taking off the crop of 1857.

There was judgment sustaining the opposition for $1480, with interest, and ordering the Sheriff to pay it, and costs of the opposition, and costs in the four suits aforesaid, by preference, out of the proceeds of the sugar sold by him under the executions aforesaid, in preference to all other claims.

The plaintiffs in the four cases aforesaid appealed.

Upon the trial, *A. Provosty*, provisional syndic of the insolvent *R. W. McRae*, opposed the trial of all the said cases, on the ground that *McRae*, on the 6th of March, 1858, surrendered all his property to his creditors ; that the money in the hands of the Sheriff forms a part of the assets of the insolvent, and is subject, like the rest of his property, to the claims of all the creditors, to be litigated *in concurso*.

This opposition ought to have been sustained. *McRae* took the benefit of the Insolvent Act before the decision of the claims of the various parties to the sugar seized. The different suits and the opposition of *Claycomb* ought to have been referred to the court in which the insolvent proceedings were pending, to have the claims of the parties adjudicated upon.

It is true that fifty-five hogsheads of sugar have been seized by the plaintiffs, but this sugar, or its proceeds, does not belong to them by virtue alone of the seizure, if there be persons having privileges superior to those possessed by them.

*Claycomb* has filed his third opposition, claiming a privilege upon the proceeds of the sugar ; and as *McRae* has no legal existence, but is represented by the syndic, this litigation must necessarily be referred to be tried with the other insolvent proceedings.

The sugar does not belong to the seizing creditors absolutely, for if it did, no creditors could contest their claims on the ground of privilege.

In *Elmes* v. *Estevan*, 1 M. 193, the court said, that when a debtor cedes his goods to his creditors, and a stay of proceedings is granted, the cession operates the civil death of the debtor. He cannot, consequently, remain a party in a suit. The judge's order stops all proceedings against the debtor, whether they be carried on against his person, general estate, or any part of it. His rights pass to other persons, and cannot be affected by legal proceedings to which the new owners are not parties.

In *Syndic of Bermudez* v. *J. Canez & Milne*, 3 M. 39, the court held, that a cession of property, and the order thereon, operates a stay of all proceedings, even the sale of property encumbered as security for a debt, which a court of competent jurisdiction, by a judgment rendered before the failure, had ordered to be sold. The court say, that the decree ordering a stay of proceedings against the owner of the land ought to have stopped the judicial sale of that land, and that the sale made in contravention to it was illegal and void. The court also ordered, that the said land be surrendered to the syndics of the creditors of *Bermudez*, the owner of the land, to be sold.

In *Canez et al.* v. *Schooner James M. Kinley et als.*, 2 N. S. 307, where a creditor had levied an attachment upon a vessel, the joint property of his joint debtors, which was sold, and, before payment of the proceeds by the Sheriff, one of the debtors became insolvent, it was held, that his syndics were entitled to receive his portion of the proceeds, but not that of his co-debtor.

The court say, " We are of opinion that the syndics had a right to take into their possession all the property of the insolvent, and of course, that they were authorized to demand and receive any moneys belonging to his estate. Such are the express commands of the law, and without such a right, it would be impossi-

LYONS
v.
McRAE.

ble to adjust the conflicting pretensions of creditors, or make a final settlement of the estate."

The decisions of this court establish, that after the acceptance of the *cessio bonorum* by the judge, for the benefit of the creditors, the property surrendered is vested in the latter, so as to be no longer liable to seizure, attachment or execution, but they acquire no real ownership in it; that a judgment is improperly signed, after the debtor has made a cession of his goods; for the suit should be cumulated with the proceedings of the *concurso;* that the object of the law is, that the rights of all the creditors should remain in the state they were in at the time of the insolvency. *Rivas* v. *Hunstock*, 2 R. 187, 9 R. 219, 3 An. 387, 4 M. 562, 4 An. 490; *Clark* v. *Oddie*, 4 N. S. 625, 10 M. 178, 5 R. 101, 3 An. 582, 7 R. 61; *Collins* v. *Duffy*, 7 An. 40; *Succession of Walker*, 14 An.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed; that the four suits aforesaid of appellants and the third opposition of *Thomas Claycomb* be cumulated with the proceedings of the *concurso*, in the court where the insolvent proceedings against *R. W. McRae* are being conducted, and that these suits and the opposition of *Claycomb* be remanded to the lower court, to be proceeded with according to law; that the costs of appeal be paid by appellee, and those of the lower court shall abide the final decision upon the rights of the parties.

MERRICK, C. J., dissenting. Sundry judgment creditors of *R. W. McRae*, caused to be seized under execution fifty-five hogshsheads of sugar of the crop of 1857. The seizure and *sale* of the sugar appear to have been both made prior to the surrender of *R. W. McRae*. *Claycomb*, one month previous to the surrender, filed an opposition wherein he claimed a privilege upon the sugar for barrels and hogsheads furnished to take off the same.

The creditors excepted to the opposition, alleging that it disclosed no cause of action. The syndic opposed the trial of the opposition and claimed the money in the Sheriff's hands as belonging to the assets surrendered.

The District Judge considered the opposition and rendered judgment in favor of the opponent, *Claycomb*, and the other parties appealed.

By the sale of the property, to-wit: the sugar, previous to the surrender, *McRae's* title to it had been divested. The money made by the sale was no longer under the control of *McRae*, but the judgment creditors had the right to demand the same from the Sheriff, saving the right of the privilege creditors who had set up their claim previous to the sale. The syndic had no greater right to the proceeds than *McRae* himself had, and the proceeds could not be carried into the surrender and become subject to the commissions of the syndic, and the costs and charges of the surrender as well as those of the Sheriff in making the sale.

The surrender is but a mode of execution, and the creditor who has completed the one process and made his debt, cannot be compelled to resort to the other.

See the case of the succession of *J. Walker*, 14 An. *Campbell* v. *Slidell*, 5 An. 274.

The authorities cited in support of the opposite doctrine do not appear to me applicable. In none of those cases had the money been made on execution prior to the surrender as in the present case. Those cases appear to me to be correctly decided, and in no manner conflicting with the recent decision of this court in the case of the succession of *J. Walker*. Op. Book 30, p. 253.

In the case of *Canez* v. *Schooner James McKinley*, the sale was made under an order of court, and the property being held in common, the only question was

whether the syndics of one of the joint owners of the ship could take into their possession the whole proceeds when one-half belonged to another, and it was held they could not, and they were ordered to pay said one-half into the hands of the Sheriff. 2 N. S. 310, 311.

I can see no reason why a creditor who by his diligence has made his debt upon execution should be deprived of his funds by the surrender. The day that the money has been made by the creditor, on execution, he is entitled to be paid by the Sheriff. This is a right which the law gives him. If he has this right to immediate payment the day the money is made, it is difficult to see in what manner he forfeits the right by any reasonable delay. The right must exist, and the accident of a subsequent surrender cannot deprive the creditor of such right.

The testimony in this case was received without objection, and I think the judgment ought to be affirmed.

LAND, J., concurred in this opinion.